IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 23, 2009 Session

## STATE OF TENNESSEE v. EDDIE D. JOHNSON

**Appeal from the Criminal Court for Hamilton County**
**No. 263614     Don W. Poole, Judge**

---

**No. E2009-00204-CCA-R3-CD - Filed July 29, 2009**

---

The defendant, Eddie D. Johnson, appeals from his Hamilton County bench trial conviction of driving under the influence. He challenges the legal sufficiency of the conviction evidence. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Jerry H. Summers and Marya L. Schalk, Chattanooga, Tennessee, for the appellant, Eddie D. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the September 28, 2006 arrest of the defendant for driving on a public roadway while intoxicated. On April 11, 2007, a Hamilton County grand jury returned a three-count indictment against the defendant charging him with violation of Tennessee's implied consent law for refusing to submit to testing for his blood alcohol content, *see* T.C.A. § 55-10-406 (2006), driving in excess of the speed limit, *see id.* § 55-8-152, and driving under the influence of an intoxicant ("DUI"), *see id.* § 55-10-401. After a bench trial, the trial court convicted the defendant of DUI, first offense, on October 27, 2008. The court further found that the defendant violated the implied consent law. The trial court entered a judgment of conviction for the DUI offense and sentenced the defendant to 11 months, 29 days in the workhouse, with the sentence suspended except for 24 hours in the workhouse and three days' public work. The judgment ordered the suspension of the defendant's driver's license for one year. The court further ordered the defendant to complete a DUI course and pay a $450 fine. The trial court entered a separate order

declaring the defendant in violation of the implied consent law and suspending his driver's license for one year.

At the bench trial, Officer David Allen of the Chattanooga Police Department's DUI Division testified that he had advanced DUI training and had made more than 400 arrests for DUI since 2005. He testified that at approximately 11:15 p.m. on September 28, 2006, he observed the defendant speeding on Lee Highway in his Ford F-150 pickup truck. He used a calibrated radar to determine that the defendant was driving 54 miles per hour where the posted speed limit was 40 miles per hour.

After the defendant pulled his truck onto the shoulder of an exit ramp off Lee Highway, Officer Allen approached the vehicle. He testified that he introduced himself to the defendant and informed him that he was speeding. Officer Allen testified that he noticed an "odor of an alcoholic beverage about [the defendant's] person." He described the odor as "moderate" but "obvious." Officer Allen testified that the defendant appeared intoxicated and had "that look" that Officer Allen had "[s]een . . . over 400 times, it's the bloodshot red eyes, just the flushed face, it's just the look that commonly comes with being intoxicated." He stated that the defendant admitted to drinking one beer at approximately 8:30 that evening at Bud's Sports Bar.

Officer Allen testified that he asked the defendant to exit the vehicle and perform a series of field sobriety tests. He described the traffic passing as "moderate." He testified that he did not notice anything unusual during the Horizontal Gaze Nystagamus test. He then drew two green lines on the pavement and conducted a walk and turn test with the defendant. Officer Allen testified that the defendant began the test early despite Officer Allen's telling him to remain still during his instructions on how to perform the test. Officer Allen noted several errors during the defendant's performance of the walk and turn test. He explained that the defendant missed placing his heel to his toe, stepped off the line several times, raised his arms, had repeated difficulty with the turn, had difficulty following instructions, and took an additional step in his return walk.

He then instructed the defendant to perform the one-leg stand test, to which the defendant responded that he "may have Vertigo." Officer Allen testified that, during the passing of 30 seconds, the defendant swayed four times, put his foot down three times, and raised his arms more than six inches. He explained that the defendant indicated three of the four possible clues of intoxication from the test. Officer Allen then asked the defendant to recite the alphabet. He testified that the defendant misstated the end of the alphabet, saying "Q U R S T U V W X Y Z." He then instructed the defendant to count backwards from 79 to 39. Officer Allen testified that the defendant counted correctly but that he continued past 39 to 36.

Officer Allen said, "Based on the field sobriety tests, the odor, and his admission to drinking, I felt he was too intoxicated to operate a car and therefore placed him under arrest for driving under the influence." He testified that the defendant refused to submit to a blood alcohol test. He said that he presented the defendant with an implied consent form, which he reviewed and signed at the Hamilton County jail. Officer Allen stated that the defendant told him that "he knew about two [beers] was the limit, and since he[ had] only one, he didn't feel he should have to take

it." Officer Allen testified that he informed the defendant that, if he took the test and the resulting blood alcohol content was less than the legal limit, the DUI charge would be dismissed.

On cross-examination, Officer Allen admitted that, on his alcohol influence report, he made no notation of the defendant's expressing any negative attitude characteristics. He also made no notation that the defendant was "hiccupping, belching, vomiting, fighting, crying or laughing." He agreed that, if a person had an illness that affected his or her balance, such an illness could make the field tests unreliable; however, he testified that he was unfamiliar with vertigo and its symptoms. Officer Allen further acknowledged that the defendant informed him that he was "very nervous."

Officer Allen also admitted that, besides the defendant's speeding, he did not notice any other improper operation of the vehicle. He agreed that, when he pulled the defendant over, the defendant told him he was speeding in an attempt to pass other traffic. He maintained that the area in which the field tests were performed was "fairly flat." Officer Allen further agreed that, whether the defendant submitted to a blood alcohol content test, he would have taken him into custody.

The State entered as exhibits the defendant's "Mugshot Profile" which reflected his appearance the night of September 28, 2006, the signed implied consent form, and a video-recording of Officer Allen's stop and arrest of the defendant.

A review of the video-recording shows that the defendant's speech was not slurred and that his communication was clear. The defendant attempted the walk and turn test three times. The first time, the defendant stopped after completing the first nine steps and asked Officer Allen for further instructions. Officer Allen then told the defendant that he should have clarified the instructions before beginning the test. The defendant again completed the first nine steps of the test, then made a 360-degree turn and stopped. At that point, Officer Allen informed the defendant to begin the test again and re-explained his instructions. Upon the third attempt, the defendant successfully performed the walk and turn test. The video-recording also showed that the green line upon which the defendant walked appeared slightly curved.

The video-recording also reflects that, upon receiving instructions on the one-leg stand test, the defendant immediately informed Officer Allen that he had vertigo and steel mesh in his head and that he did not think he could perform the test. The defendant told Officer Allen that, nevertheless, he would attempt the test. Upon raising his foot, the defendant immediately placed it down and stated that he was unable to perform the test. Despite his protestation, Officer Allen continued to ask him to perform the test, and the defendant failed at two further attempts. The video-recording's account of the defendant's alphabet and counting are consistent with Officer Allen's testimony.

The defense called Darrell Embry, who had bartended at Bud's Sports Bar for seven years. Mr. Embry testified that he had known the defendant as a patron of Bud's since he started working there. He recalled that, on the night of September 28, 2006, he and the defendant had placed bets on a college football game playing on television that evening. He said that the defendant arrived at the bar and ordered one 12-ounce bottle of Coors Light and that the defendant drank Diet

Coke after that. Mr. Embry testified that the defendant ordered food to take with him and that he left a short time before the bar closed at 11:00 p.m.

Mr. Embry testified that the defendant was in his presence the entire time that he was at Bud's. Mr. Embry explained that he had received training in determining whether a patron is intoxicated. He explained the importance of such training because Bud's may be held legally liable for any harm an intoxicated motorist causes after leaving the bar. Mr. Embry testified that the defendant showed no indication of intoxication. He testified that the defendant's face was always red because "he's out in the sun" all day.

On cross-examination, Mr. Embry testified that the defendant patronized the bar two or three times per week. He stated that Bud's had a process for dealing with intoxicated patrons that included finding them alternative transportation. He further admitted that his employment could be jeopardized when an intoxicated patron drives him or herself home after being served by Mr. Embry. He admitted that he failed to tell law enforcement officers or the district attorney's office about the defendant's consuming only one beer.

The defendant testified that he had worked for Jones Brothers Construction for approximately 10 years. At the time of his arrest, he worked as the foreman of a project renovating Market Street Bridge in Chattanooga. He stated that his employment required him to spend his workdays outdoors. The defendant testified that his eyes always appeared red, and he approached the bench so that the court could observe the usual redness of his eyes. He explained that in 1989, his "total eye orbit was crushed and disintegrated and [he] had to have a titanium mesh plate installed in [his] right eye to support the eye." He testified that the titanum mesh causes his right eye to appear especially red and that it affects his sense of balance. He explained, "I have very poor balance on anything, and if I tilt my head back, I'll get just constant dizzy spells and just almost get sick at my stomach." He testified to having daily "dizzy spells." He last visited a hospital for vertigo treatment in 1989 during his treatment for his crushed orbit. He also suffered from a deviated septum and complained of double-vision when looking downwards.

The defendant testified that, on September 28, 2006, he worked a 12-hour shift and left work at approximately 6:30 p.m. He then drove to deliver something to his son in Ringgold, Georgia, approximately 15 miles from Chattanooga. He testified that he then went to Bud's and ordered a beer and a chicken dinner to take home. He stayed at the bar watching the football game on which he had placed a bet because he did not have cable television at his apartment. He testified that he left Bud's to drive to his apartment and that he was not intoxicated. He further testified that he was not taking any medication on September 28, 2006.

The defendant said that he was traveling on Lee Highway at the speed limit when a vehicle pulled out in front of him and that he then sped up to avoid the vehicle. He testified that he saw a police cruiser with activated blue lights behind him and that he turned left and pulled to the shoulder of an exit ramp. He testified that the exit ramp had a downward slope. The defendant stated that, when asked to do the one-foot stand test, he informed the officer that he had vertigo.

On cross-examination, the defendant admitted that he did not have to close his eyes and tilt his head back during the field testing; however, he maintained that he had "horrible balance" at all times. He testified that he was extremely nervous during the field testing and that he found Officer Allen's instructions unclear. He maintained that the field tests were performed on a slight incline that affected his performance. He further explained that he refused any blood alcohol testing because Officer Allen had already placed him under arrest and was transporting him to jail regardless of his submitting to a test.

The defense offered as an exhibit a letter from Dr. David T. Stafford, who reviewed the affidavit of complaint, indictment, alcohol report form, preliminary hearing transcript, and video-recording of the stop and arrest. The letter explained that an individual of the defendant's size would have a blood alcohol content of .02 to .03 grams/deciliter after consuming one 12-ounce beer, which would not impair driving functions. Dr. Stafford's letter also explained that the defendant's behavior appeared to conform to a .02 to .03 blood alcohol content and that he did not appear intoxicated.

Medical records exhibited by the defendant showed that he was diagnosed with vertigo in 1989. The records reflect that the symptoms appeared when "looking up [and] to the side." Further the records reflect that the defendant experienced diplopia (double-vision) only when looking downward. The records also explained his previous head surgery for his deviated septum and crushed orbit.

After reviewing the evidence, the trial court found the defendant guilty of DUI. Specifically, the trial court found that the defendant was properly stopped for speeding by an experienced police officer. The court considered Officer Allen's instructions clear and understandable. Although taking into account the defendant's vertigo, the court reasoned that those symptoms would not contribute to his failure to perform the walk and turn test. Considering the defendant's failure to perform the one-leg stand test, the court commented that the defendant could not even hold up his foot for one second and that his performance was "completely bad." The court noted that the defendant completed all other tests "fairly well" and that the defendant satisfactorily recited the alphabet and counted backwards. The court considered the defendant's refusal to take a blood alcohol test as an indication of guilt.

The court dismissed the defendant's speeding charge because the DUI charge encompassed the lesser charge. It entered an order of guilt of the civil offense of violation of implied consent law. The defendant filed a timely motion for new trial which was denied after a hearing. He then filed a timely notice of appeal.

The defendant's sole issue on appeal is whether the convicting evidence was legally sufficient to support his DUI conviction. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

-5-

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"[W]hen a court's findings of fact," however, "are based solely on evidence that does not involve issues of credibility, such as the videotape evidence in this case, the rationale underlying a more deferential standard of review is not implicated." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

A person commits DUI who drives or is in "physical control of any automobile or other motor driven vehicle on any of the public roads and highways . . . or while on . . . any . . . premises which is generally frequented by the public at large" while under the influence of any intoxicant or with a blood or breath alcohol concentration of .08 percent or more. T.C.A. § 55-10-401(a) (2006).

Viewing the evidence in a light most favorable to the State, we affirm the judgment of the trial court. The trial court clearly credited Officer Allen's testimony as to the odor of alcohol about the defendant, the defendant's intoxicated appearance, and his inability to successfully perform the walk and turn test and the one-leg stand test. The court specifically noted Officer Allen's extensive experience in DUI arrests. Further, the trial court acted within its discretion in considering, in light of other evidence, the defendant's refusal of testing for blood alcohol concentration as an indicator of guilt. *See State v. Morgan*, 692 S.W.2d 428, 430 (Tenn. Crim. App. 1985). We note, upon our review of the video-recording of the stop and subsequent arrest, that the defendant appeared calm and respectful and that this presented a close case for the trier of fact; however, we will not re-weigh or re-evaluate this evidence in light of the other factual findings of the trial court. *See State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

In light of the foregoing analysis, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE